IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

STATE OF WEST VIRGINIA, *ex rel.*,
PATRICK MORRISEY, Attorney General, *et al.*,

                        **Plaintiffs,**

v.                                  **Civil Action No. 2:17-cv-03555**
                                         **Judge David Faber**

McKESSON CORPORATION,

                         **Defendant.**

**DEFENDANT'S RESPONSE IN OPPOSITION TO THE STATE OF WEST VIRGINIA'S
<u>MOTION TO REMAND AND FOR COSTS AND FEES</u>**

## I. <u>INTRODUCTION</u>

      McKesson Corporation ("McKesson") removed this case for a second time, because

Plaintiffs[1] have relied on federal law and have given this Court federal question jurisdiction.

Plaintiffs said one thing to obtain remand:

> [T]he defendant would have this Court rule that the DEA letter is
> now binding on distributors of controlled substances, simply in an
> attempt to create a binding duty where none exists.

And back in state court, Plaintiffs said the opposite to identify a duty for their claims:

> The Drug Enforcement Administration (DEA) for many years has
> instructed McKesson . . . that as part of its duty to maintain
> effective controls and procedures to guard against diversion . . .,
> McKesson must not distribute suspicious orders of controlled
> substances.  DEA letters, Ex. 5.

      McKesson's removal thus is neither untimely nor improper.  Federal question jurisdiction

is based on Plaintiffs' reversal of position ***after*** they obtained the first remand.  This Court

---

[1] Plaintiffs are the State of West Virginia through its Attorney General (the "WVAG"), and the West
Virginia Department of Military Affairs and Public Safety ("WVDMAPS") and the West Virginia
Department of Health and Human Resources ("WVDHHR") through their respective Secretaries.

upheld an identical second removal when, after defeating a first removal, the plaintiff disclosed a call log that established she sought well more than the jurisdictional amount. And Plaintiffs' reliance on the Drug Enforcement Administration's Shipping Requirement as the duty to limit distribution states a federal question that is necessary and substantial. Plaintiffs' claims of over-distribution of prescription opioids necessarily require that Plaintiffs identify a duty not to ship so many, and Congress's "unified approach to narcotic and dangerous drug control" that animates the Controlled Substances Act could not be a more substantial federal interest.

## II. <u>BACKGROUND</u>

McKesson initially removed this case and asserted that federal question jurisdiction exists, despite Plaintiffs' artful pleading.[2] In addition to pleading specific violations of West Virginia law, Plaintiffs plead in their Amended Complaint that McKesson generally violated "United States laws and regulations." Plaintiffs' claim, regardless of label, is that McKesson distributed too many prescription opioids into West Virginia. Plaintiffs' claim of over-distribution of prescription opioids necessarily has as an essential element a duty to curtail shipments, and Plaintiffs so plead: McKesson "has a legal duty to ensure it was not filling suspicious orders" (Am. Compl. ¶ 72). The only duty to curtail lawful shipments of prescription opioids of which McKesson is aware is the duty imposed by the U.S. Drug Enforcement Administration ("DEA") interpreting the federal Controlled Substances Act (the "CSA").

Plaintiffs obtained remand by disavowing any reliance on federal law. Plaintiffs vigorously asserted that the DEA's interpretation of the federal CSA, found in two letters and

---

[2] Contrary to Plaintiffs' assertion that "McKesson failed to indicate in its second civil information sheet filed with its Second NOR that this case already has an assigned civil action number" (Doc. 5 at 5 n.3), McKesson listed Case Number 2:16-cv-01772 and Judge Copenhaver as its first related case (Doc. 1-9 at 2).

registration revocation decisions, created no duty to suspend shipments of suspicious orders. Plaintiffs asserted that they could find McKesson liable for alleged over-distribution of opioids solely through state law claims. Based on those assertions, this Court found that the Amended Complaint's references to federal law were ambiguous. It resolved the doubts that Plaintiffs created in favor of remand.

Back in state court, however, Plaintiffs reversed course. Plaintiffs opposed McKesson's motion for judgment on the pleadings by asserting that McKesson is subject to the federal law duty that Plaintiffs earlier discredited. Plaintiffs attached to their opposition, as statements of the duty not to ship, the very DEA letters that they previously said had no binding effect. Plaintiffs explicitly asserted that federal law imposes a duty on McKesson to refuse to ship suspicious orders of controlled substances. Accordingly, Plaintiffs' June 30, 2017 state court opposition brief is "other paper from which it may first be ascertained that [this] case is one which is or has become removable." 28 U.S.C. 1446(b)(3).

## A.    Plaintiffs Stated that They Do Not Rely on Federal Law.

Last year, Plaintiffs disavowed any reliance on federal law in support of remand, asserting that "it is impossible" for federal law "to be implicated" in their claims:

> [I]n examining the federal [Controlled Substances] Act's language, it is clear that, like the W[est] V[irginia] C[ontrolled] S[ubstances] A[ct], the federal act does not expressly create a legal duty upon distributors to refuse to ship suspicious orders. The cases the defendant cites show that the DEA letter does not create a binding effect upon distributors such as the defendant, and is to be construed as a mere "warning letter." *See, In re Masters Pharmaceuticals*, 80 Fed. Reg. at 55,475. Despite this, the defendant would have this Court rule that the DEA letter is now binding on distributors of controlled substances, simply in an **attempt to create a binding duty where none exists**. Because the federal Act does not purport a legal duty upon the defendant to refuse to ship suspicious order, **it is impossible for [the federal CSA] to be implicated** simply because the State used the words "refuse" or "suspend" in its Amended Complaint.

3

(Plfs.' Reply in Support of Remand, at 7 (April 13, 2016), Ex. F to Plfs.' Remand Mot., Doc. 4 at

133 (emphasis added); *see id.* at 4, Doc. 4 at 130 (same).)  Plaintiffs similarly stated:

> [T]he State's Amended Complaint does not identify any federal
> statute or regulation as its legal foundation for its claims against
> the defendant.

(*Id.* at 15, Doc. 4 at 141.)  Plaintiffs also stated:

> The federal CSA "reads similarly to the WVCSA, requiring public
> interest factors to be determined by the [U.S.] Attorney General
> **for registration**, including 'maintenance of effective controls
> against diversion of particular controlled substances.' 21 U.S.C.
> § 823(a)(1)."

(*Id.* at 4, Doc. 4 at 130 (emphasis added).)

Plaintiffs thus sought remand based on their positions that:

> (1) The text of the federal CSA and its regulations creates no duty on
> distributors to limit shipments;
>
> (2) The DEA imposes no binding duty on distributors to limit
> shipments through its letters and adjudications interpreting the
> CSA; and
>
> (3) Maintaining effective controls against diversion is only a
> regulatory requirement of registration, not a legal duty supporting a
> cause of action.

(*See id.* at 3-7, Doc. 4 at 129-33.)

Plaintiffs asserted that their claims rely on allegations that McKesson "violated West

Virginia laws, and in particular the WVCSA," when McKesson allegedly failed to identify

suspicious orders and report them to the West Virginia Board of Pharmacy.  Because of this,

allegedly "negligent fillings of suspicious orders occurred."[3]  (*Id.* at 8-9, Doc. 4 at 134-35.)

---

[3] Plaintiffs never explained, however, what West Virginia law governed whether McKesson could ship
suspicious orders of controlled substances.  In their initial memorandum in support of remand, Plaintiffs
asserted that the "State is empowered" under the WVCSA to "cease" or "stop" suspicious orders "once
notice of suspicious orders is provided by distributors such as the defendant."  (Plfs.' Remand Mem.,
(continued…)

**B.      This Court Remanded Because of Ambiguity and Doubts.**

Based on Plaintiffs' assertions, this Court remanded.  This Court concluded in ordering

remand that:

> Plaintiffs do not allege, however, that such federal law provides
> either a cause of action or a basis for a legal duty violated here, and
> as such it cannot be a basis for federal jurisdiction.

(Mem. Op. & Order, Case 2:16-cv-01772, Doc. 29 at 17 (Jan. 24, 2017).[4])  This Court also

concluded that:

> [P]laintiffs have not alleged violations of any specific federal laws
> or regulations, and no federal statute or regulation has emerged as
> an "essential element" of the underlying claim.  Rather, plaintiffs
> have alleged numerous and substantial issues of state law in both
> their complaint and their motion.

(*Id.* at 23; *see also id.* at 22 ("Even if the only duty at issue were that stipulated by defendant,

there is no reason to think its only source lies in the two letters from DEA.").)  This Court

concluded that Plaintiffs' multiple "generic references to 'United States laws and regulations'

emerge as nothing more than ambiguous catch-alls."  (*Id.* at 16.)  Accordingly, this Court

resolved doubts in favor of remand.  (*Id.* at 25.)

Judge John T. Copenhaver, Jr.'s first remand order on January 24, 2017 establishes that

this case was not removable at that time.  Because "a notice of removal [was] properly filed

'together with a copy of all process, pleadings, and orders served upon' the defendant, 28 U.S.C.

---

Case 2:16-cv-01772, Doc. 9 at 4; *see id.* at 10 (alleging that "duty to 'cease' or 'stop' sales" of suspicious orders "lies with the State Board of Pharmacy once the defendant notifies them of suspicious orders.") By their reply memorandum, Plaintiffs abandoned this incorrect statement of West Virginia law—the WVCSA does not give the WVBOP the authority to interdict shipments—and Plaintiffs never cited to any other West Virginia law that imposes a duty not to ship.

[4] As McKesson's Notice of Removal observes, seven West Virginia counties have filed actions in this Court claiming that distributors are liable to them for flooding their counties with opioids, similar to Plaintiffs' claims in this action.  The seven counties explicitly plead violations of duties found in the federal CSA and attach to their complaints, *inter alia*, the 2006 and 2007 DEA letters that Plaintiffs attached to their state court opposition brief (*see* Doc. 1-3 at 20-26.).

§ 1446(a), but the case [was] subsequently remanded, then it is evident that there was no document in the record from which it could be ascertained that the case was removable." *Bowyer v. Countrywide Home Loans Servicing LP*, No. CIV.A. 5:09-CV-00402, 2009 WL 2599307, at *2 (S.D.W. Va. Aug. 21, 2009) (Johnston, J.).[5]  Judge Copenhaver's remand order, however, does not establish that the case never could become removable again. *See id.* at *2-*5, discussed *infra* § III(A) (upholding second removal based on "other paper" that established federal jurisdiction).

**C.      Back in State Court, Plaintiffs Reversed Position and Resolved the Ambiguity.**

After remand to state court, McKesson moved in state court for judgment on the pleadings.[6]  (*See generally* Mem. Def.'s Mot'n J. Pleadings, Civil Action No. 16-C-1, Circuit Ct. of Boone County, W. Va. (June 1, 2016), attached as **Exhibit A**.)  McKesson specifically

---

[5] Accordingly, Plaintiffs' assertion that "[t]he State's claims against McKesson were first ascertainable far more than thirty (30) days prior to its second NOR" (Doc. 5 at 10) is irrelevant.  As this Court stated in *Bowyer*, "Defendant's previous unsuccessful attempt to remove this case was premised on the complaint. At that time, there were no documents in the record or otherwise received by Defendant that indicated that the amount in controversy exceeded the jurisdictional threshold. Defendant may well have been aware that it potentially was facing statutory penalties for nearly three thousand telephone calls to Plaintiff, but its subjective knowledge of the amount in controversy [basis for diversity jurisdiction] was irrelevant under § 1446." *Id.* at *4.  This is why Plaintiffs also are off-base that "McKesson is improperly asserting [Judge Copenhaver's] Remand Order is 'incorrect.'" (Doc. 5 at 2 n.1.)  Following Judge Copenhaver's remand order, Plaintiffs have changed course and stated a federal question.

[6] Plaintiffs' remand briefing anticipated McKesson's motion.  In obtaining the first remand, Plaintiffs asserted that the state court could excise any inadvertent references to federal law:

> To the extent that the defendant may be correct that reference to a duty to cease sales of controlled substances is not required under West Virginia law, that is a simple matter to resolve in the Circuit Court of Boone County by way of motion or amended pleading.  It is not unusual for a circuit court to dispense with claims that do not comport with each element of the particular West Virginia statute.

(Plfs.' Reply in Support of Remand, at 10, Ex. F to Plfs.' Remand Mot., Doc. 4 at 136; *see id.* at 17, Doc. 4 at 143 (same).)  While this is an incorrect statement of the law—if Plaintiffs' claims asserted violations of federal law, they stated a federal question, and it is not up to a state court to excise the federal law— Plaintiffs nonetheless represented that the state court should dismiss claims relying on federal law that is not present in the WVCSA.

asserted that Plaintiffs had no authority to enforce the West Virginia Controlled Substances Act

("WVCSA") and that West Virginia law creates no duty to refuse to ship suspicious orders.[7]

(*See id.* at 5-8.)  McKesson also asserted that the pharmacists' "corresponding responsibility"

does not create a duty that applies to distributors and that industry customs and standards do not

create legally enforceable duty.  (*Id.* at 8-10.)

In opposition to these specific arguments, under the heading "DUTY TO REFUSE TO

SHIP SUSPICIOUS ORDERS," Plaintiffs reversed course.  Plaintiffs explicitly asserted that the

source of the alleged duty not to ship suspicious orders is found in federal law:

> McKesson fully comprehends its **obligation to never distribute
> suspicious orders** of addictive controlled substances.  This is an
> **inherent part of its duty to maintain effective controls** and
> procedures to guard against diversion of controlled substances, a
> duty that would be rendered illusory if McKesson was not **obliged
> to refrain from distributing suspicious orders** of controlled
> substances.  **The Drug Enforcement Administration** (DEA) for
> many years has **instructed** McKesson (and all other controlled
> substance distributors) that as part of its **duty to maintain
> effective controls** and procedures to guard against diversion (the
> identical duty imposed by West Virginia law), **McKesson must
> not distribute suspicious orders of controlled substances**.  **DEA
> letters**, Ex. 5.  Because West Virginia law identically requires
> effective controls and procedures to guard against diversion, it
> likewise bars McKesson from distributing suspicious orders.  Thus,
> while this issue is not determinative of the State's claims, it is
> **abundantly clear** that by distributing suspicious orders of
> controlled substances into West Virginia, McKesson **violates a
> legal duty owed to the State to refrain from doing so**.

(Plfs.' Resp. to McKesson's Mot'n for J. Pleadings, Civil Action No. 16-C-1, at 10-11 (Cir. Ct.

of Boone County, W. Va. June 30, 2017) (emphasis added; footnotes omitted), attached as Ex. A

---

[7] Because McKesson moved under W. Va. R. Civ. P. 12(c), it directed its arguments to the legal
insufficiency of Plaintiffs' claims.  McKesson never made factual assertions regarding whether it had
shipped suspicious orders, and McKesson never asserted that "its shipping of suspicious orders is
immunized conduct, which it is contending is a *defense* to the State's claims" as Plaintiffs assert.  (Doc. 4
at 20 n.18.)  Plaintiffs' re-characterization of McKesson's Rule 12(c) arguments is incorrect.

to Notice of Removal, Doc. 1-1 at 11-12.)  Plaintiffs attached two DEA letters to distributors in 2006 and 2007—the same DEA letters they discounted in order to obtain remand.  (*See* Doc. 1-3 at 20-26.)  Plaintiffs attached the DEA letters in support of the duty that "McKesson must not distribute suspicious orders of controlled substances."  (Doc. 1-1 at 12.)  Although Plaintiffs parenthetically refer to "the identical duty imposed by West Virginia law," they attached only the DEA letters and provided no citation to West Virginia law for a parallel source of the duty.  There is none in West Virginia law.[8]

Plaintiffs similarly asserted federal law when they stated in their state court opposition:

> The State is not suggesting McKesson dispensed controlled substances directly to patients, but that it had an **obligation to know its customers**, and its **negligent failure to do so** proximately **caused suspicious order distributions to be dispensed** by pharmacies to patients.

(Doc. 1-1 at 12-13 (emphasis added; citation to Def.'s Mem. omitted).)  Plaintiffs provide no citation for the asserted "obligation to know its customers," but the assertion is found in the DEA's interpretation of the federal CSA as explicated in its letters and in adjudications.[9]  (*See, e.g.*, 2006 DEA Letter, Doc. 1-3 at 23.)  No West Virginia law imposes on McKesson "an obligation to know its customers."[10]

---

[8] As McKesson's Notice of Removal (Doc. 1) explains at ¶¶ 29-35, 40-43, no West Virginia law provides a context in which to read this exclusively federal law duty.  The West Virginia Board of Pharmacy ("WVBOP") never has interpreted the West Virginia Controlled Substances Act ("WVCSA") in that manner.  Plaintiffs have asked a state court to apply federal law outright.

[9] As McKesson has asserted but Plaintiffs avoid discussing, the DEA's interpretation of the federal CSA to create a "Shipping Requirement" is found not only in its letters but also in two registration revocation adjudications, *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, (DEA July 3, 2007), and *In re Masters Pharm., Inc.*, Decision and Order, 80 Fed. Reg. 55,418 (DEA Sept. 15, 2015).  *See Masters Pharm. Inc. v. Drug Enf't Admin.*, 861 F.3d 206, 212-13 (10th Cir. 2017).

[10] Plaintiffs' state court discovery to McKesson includes 135 requests for admission concerning McKesson's efforts to know its customers and McKesson's controlled substances monitoring program, (continued…)

Plaintiffs also raise a federal question by asking the state court to take judicial notice of McKesson's 2017 settlement with the U.S. Department of Justice.  As Plaintiffs stated, McKesson settled "civil claims [the federal government had] against McKesson."  (Doc. 1-1 at 3.)  Plaintiffs listed the federal civil claims that McKesson settled, including "failing to follow standards articulated by the DEA's Office of Diversion Control (*see* Ex. 5 [the 2006 and 2007 DEA letters])."  (Doc. 1-1 at 4.)  Plaintiffs had no reason to ask the state court to take judicial notice of McKesson's settlement of federal civil claims under the CSA other than to ask the state court to impose the same federal obligations on McKesson.  McKesson's federal settlement is not evidence that McKesson potentially violated any state law.  In particular, no state law imposes "standards articulated by the DEA's Office of Diversion Control" in the 2006 and 2007 DEA letters.

In summary, Plaintiffs opposed McKesson's motion for judgment on the pleadings by asserting that federal law creates the duty on McKesson not to ship suspicious orders.  Plaintiffs asked the state court to impose on McKesson the DEA's interpretation of the federal CSA that distributors have a duty not to ship suspicious orders.[11]  This is the very definition of stating a federal question.  In order to hold McKesson liable for shipping too many prescription opioids, Plaintiffs must identify a legal duty not to ship so many, as Plaintiffs plead.[12]  (*See* Am. Compl.

_____

including DEA oversight of the program.  Such discovery would be relevant, if at all, only to whether McKesson complied with federal law.

[11] Plaintiffs nonsensically assert that their citation of the DEA letters and McKesson's involvement in industry guidelines, which were to aid compliance with the letters, was merely to establish that McKesson was "on notice" of its duties under West Virginia law.  (Doc. 5 at 17-18.)  First, Plaintiffs have no need to establish that a regulated entity was aware of applicable state law.  Second, the DEA letters and industry guidelines exclusively refer to federal law and in no way provide notice to McKesson of specific state law duties.

[12] Plaintiffs' assertion that "this issue is not determinative of the State's claims" (Doc. 5 at 18 (quoting Plaintiffs' opposition brief)) thus is entirely specious.  Plaintiffs' 446-paragraph Amended Complaint is directed at claiming that McKesson should be found liable for "distributing controlled substances . . . in (continued…)

¶ 72; Notice of Removal, Doc. 1, ¶¶ 19-28.)  In opposition to McKesson's motion for judgment

on the pleadings, Plaintiffs did not stop after urging the state court to follow orders in earlier

cases that did not rely on federal law.[13]   Plaintiffs explicitly asserted that the state court should

impose a federal law duty on McKesson.

## III.  ANALYSIS

### A.   This Removal Is Neither Untimely Nor an Improper Challenge to the Earlier Remand Order.

To originally obtain remand, Plaintiffs convinced this Court that its eight references to

"United States laws and regulations" in it Amended Complaint are "nothing more than

ambiguous catch-alls."  (Mem. Op. & Order, Case 2:16-cv-01772, Doc. 29 at 16.)  Plaintiffs

stated that "**it is impossible for [the federal CSA] to be implicated**" in its claims.  (Plfs.' Reply

_____

such quantities and with such frequency, that the Defendant knew or should have known that these substances were not being prescribed and consumed for legitimate medical purposes."  (Am. Compl. ¶ 415.)  A duty not to ship prescription opioids that McKesson allegedly violated by shipping too many, therefore, is unquestionably "determinative of the State's claims."

[13] As Plaintiffs state, the state court's orders in earlier cases upheld "the validity of identical state law claims against other drug distributors **without** any reference to federal law or the DEA letters."  (Doc. 5 at 14 n.14 (emphasis added).)  This contrast emphasizes that Plaintiffs now raise a federal question that they did not raise in earlier cases.  Plaintiffs did not rely on federal law in the earlier cases but now explicitly ask the state court to apply a federal law duty.  Thus, Plaintiffs are incorrect that "acceptance of McKesson's jurisdictional arguments will require this Court . . . to disagree with similar holdings by the same state court with jurisdiction over this case" made "without reference to or reliance on any federal law or DEA warning letter."  (Doc. 5 at 8-9 n.6.)

Furthermore, contrary to Plaintiffs' assertions, their earlier cases against other distributors were not "identical" or actually "related."  If nothing else, Plaintiffs' Amended Complaint in this case is six times as long as any complaint in those earlier cases, and this Amended Complaint makes eight references to "United States laws and regulations" that were absent from the complaints in those other cases. Furthermore, Judge Copenhaver remanded those earlier cases for lack of diversity jurisdiction under the Class Action Fairness Act.  (*See* Remand Decisions cited in Doc. 5 at 5 n.3.)  Those earlier defendants never asserted federal question jurisdiction, and Judge Copenhaver never addressed it in those cases. Regardless, as Judge Joseph R. Goodwin has stated about tens of thousands of truly identical pelvic mesh cases, arguments in each case are adjudged anew.  "I refuse to credit *Daubert* arguments that simply react to the court's rulings in *Sanchez* and its progeny. Indeed, I feel bound by these earlier cases only to the extent that the expert testimony and *Daubert* objections presented to the court then are identical to those presented now. Otherwise, I assess the parties' *Daubert* arguments anew."  *E.g.*, *In re: Ethicon, Inc.*, No. 2327, 2016 WL 4962342, at *1 (S.D.W. Va. Aug. 25, 2016) (asserting that Judge has duty to respect individuality of each case).

in Support of Remand, at 4, Doc. 4 at 130 (emphasis added).)  This is no different than a plaintiff removed on diversity grounds asserting that her complaint does not actually plead damages of $75,000 or more.  McKesson's assertion that Plaintiffs were artfully pleading around—but nonetheless stating—a federal question is identical to a diversity defendant asserting that a complaint that is silent about damages nonetheless alleges the jurisdictional amount in controversy.  Plaintiffs, however, asserted—and this Court accepted—that they did not actually plead a federal question.

McKesson's subsequent state court motion for judgment on the pleadings tested Plaintiffs' assertion that they pleaded only state law claims.  McKesson specifically asked the state court to dismiss Plaintiffs' claims because Plaintiffs could not identify a duty in West Virginia law to ship fewer prescription opioids.  Plaintiffs' opposition brief then specifically asked the state court to apply federal law to McKesson to find that McKesson violated a duty not to ship suspicious orders.  (*See supra* § II(C) (quoting Plaintiffs' opposition brief reliance on federal law under the heading "DUTY TO REFUSE TO SHIP SUSPICIOUS ORDERS").)  Plaintiffs' opposition brief thus is "other paper from which it may first be ascertained that [this] case is one which is or has become removable."  28 U.S.C. 1446(b)(3).

Plaintiffs contend that McKesson "is basing removal on the same ground a second time." (Doc. 5 at 2-7.)  Plaintiffs thus contend that McKesson's current removal is "untimely under 28 U.S.C. § 1446(b)(3)" and the "putative basis for federal question jurisdiction in the second NOR was the subject of a prior Remand Order and thus is non-reviewable pursuant to 28 U.S.C. § 1447(d)."  (*Id.* at 9-14.)  This Court rejected identical arguments by a twice-removed plaintiff in *Bowyer v. Countrywide Home Loans Servicing LP*, No. CIV.A. 5:09-CV-00402, 2009 WL 2599307 (S.D.W. Va. Aug. 21, 2009) (Johnston, J.).

11

In *Bowyer*, the plaintiff defeated a first attempt at diversity removal by asserting that she was not seeking greater than the jurisdictional amount in her complaint, which stated no amount of damages sought. *Id.* at *1. At the time that case was remanded, the plaintiff made a Rule 26(a) disclosure of a call log that showed her damages potentially reached "well in excess of $1 million." *Id.* at *4. The defendant removed again and argued "that the call log is 'other paper' within the meaning of 28 U.S.C. § 1446(b) which entitle[d] it to file a second notice of removal." *Id.* at *1. In seeking a second remand, the plaintiff contended, as Plaintiffs do here, "that the second removal [was] improper because the Court lack[ed] jurisdiction to reconsider its remand order, because the second removal is an impermissible attempt to cure a defect in the first notice of removal, and because the call log is not 'other paper' sufficient to supply the grounds for a successive removal." *Id.* This Court rejected those arguments and denied remand. *Id.* at *2-*5.

This Court first stated that "[a]lthough the Fourth Circuit has not directly addressed the question, other courts have consistently held that § 1446 permits a party to file a second notice of removal after a prior unsuccessful attempt at removal." *Id.* at *2 (footnote and citations omitted). "[A] blanket prohibition on successive removals would be manifestly unwise." *Id.*[14] This Court then stated that the propriety of a second removal turns on whether the second removal is truly on the "same ground" as the first. "The prohibition against removal 'on the same ground' does not concern the theory on which federal jurisdiction exists (*i.e.*, federal question or diversity

---

[14] In the footnote to this sentence, the *Bowyer* decision quotes Judge Easterbrook writing for the Seventh Circuit: "The only effect of adopting an absolute one-bite rule would be to encourage plaintiffs to be coy. . . . [After remand,] Plaintiffs then 'fessed up, apparently believing that their earlier silence (coupled with the failed removal) had locked the case into state court. We see no reason to reward game-playing of this kind . . . ." *Id.* at n.3 (quoting *Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 783 (7th Cir. 1999)). Similarly, the Fourth Circuit has allowed reconsideration of a remand order pursuant to Rule 60(b)(3) when the plaintiffs made misrepresentations to obtain remand. *See Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001 (4th Cir. 2014) (*en banc*).

jurisdiction), but rather the pleading or event that made the case removable." *Id.* at *3 (citation omitted).

> Under § 1446(b) a defendant's right to remove is triggered by the "receipt by the defendant" of an "amended pleading, motion, order or other paper" evidencing that the case is removable. The "receipt" of information in writing, whether formally or informally, from the plaintiff is a necessary event that commences the thirty-day window to remove. *See Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 754–55 (4th Cir. 1996). The defendant's subjective knowledge of grounds for removal is irrelevant and cannot independently create a right to remove the case. *Tolley v. Monsanto Co.*, 591 F. Supp. 2d 837, 845 (S.D. W. Va. 2008) (Goodwin, C.J.). Rather, when assessing the propriety of the removal, "the court must 'rely on the face of the initial pleading and on the documents exchanged in the case by the parties ... [and] requir[e] that those grounds be apparent within the four corners of the initial pleading or subsequent paper.'" *Id.* (quoting *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 163 (4th Cir. 1997)).

*Id.* This Court also "noted that courts take a rather expansive view of the term 'other paper' used in § 1446(b)." *Id.*[15] "By employing such broad wording, it is evident that Congress intended that nearly any written document generated in the course of litigation and received by the defendant can supply grounds for removal." *Id.* Accordingly, this Court concluded that the "call log was 'other paper' reflecting grounds for removal not stated in or available for the first notice of removal, namely that the amount in controversy can be calculated based on 2951 alleged violations of the WVCCPA." *Id.* at *5.[16]

---

[15] *See, e.g.*, *Tolley v. Monsanto Co.*, 591 F. Supp. 2d 837, 845 (S.D. W. Va. 2008) ("[T]he term 'other paper' has been construed to include, for example, requests for admissions, deposition testimony, settlement offers, answers to interrogatories, briefs, and product identification documents given in discovery.") (citation omitted) (Goodwin, J.).

[16] *See also Notley v. Sterling Bank*, No. CIV.A. 3:06-CV-0536-, 2006 WL 2017412, at *5 (N.D. Tex. July 19, 2006) (concluding that damages model indicating plaintiffs' desire to assert claims under the federal Fair Credit Reporting Act ("FCRA") was "other paper" giving rise to federal question jurisdiction, despite complaint's reference to FCRA 1.5 years earlier).

This case is procedurally identical to *Bowyer*. Just as Judge Johnston's first remand order in *Bowyer* established that the case was not removable at that time, Judge Copenhaver's first remand order in this case establishes that it was not removable at that time. Plaintiffs in this case then filed their state court opposition brief on June 30, 2017. This "other paper" asks the state court to impose a federal law duty on McKesson. Just as the call log in *Bowyer* established that plaintiff sought more than the jurisdictional amount, Plaintiffs opposition brief in this case establishes that Plaintiffs assert federal law as an essential element of their claims, which Plaintiffs earlier disavowed. McKesson promptly removed this case after Plaintiffs filed their opposition brief, just as the *Bowyer* defendant removed a second time immediately after disclosure of the call log. Accordingly, as it did in *Bowyer*, this Court should reject Plaintiffs' arguments that this removal is untimely or improper.

**B.     Plaintiffs' State Court Opposition Brief States a Substantial Federal Question.**

Unlike Plaintiffs' complaints against other distributors, which never referred to federal controlled substances law, Plaintiffs chose to plead seven times that McKesson violated "United States laws and regulations" (*see* Am. Compl. ¶¶ 373-75, 382, 390, 395, 403), and Plaintiffs chose to seek an injunction to enforce *both* "West Virginia laws and regulations and United States laws and regulations relating to the distribution of controlled substances in the State" (*id.*, Prayer ¶ 3). Plaintiffs' June 30, 2017 opposition brief establishes that those references to federal law are not "ambiguous catch-alls," despite Plaintiffs' earlier assertions that they were. When confronted with McKesson's motion for judgment on the pleadings—asserting the legal insufficiency of Plaintiffs' Amended Complaint—Plaintiffs could not identify a state law duty not to ship suspicious orders. Rather, Plaintiffs explicitly asserted that the source of the duty not to ship—which they necessarily need to state claims for over-distribution—is found in federal

law.[17]  (*See supra* § II(C).)  Plaintiffs have chosen to state a federal question that gives this Court jurisdiction,[18] so there should be no need to separately analyze the *Grable/Gunn* factors for whether Plaintiffs have artfully pleaded a substantial federal question.[19]  Nonetheless, viewed through the lens of those factors, Plaintiffs' assertion of a federal law duty unquestionably raises a substantial federal question.

### 1.  Plaintiffs' assertion of the federal Shipping Requirement necessarily raises a federal issue.

Plaintiffs seek to hold McKesson liable for shipping too many prescription opioids into West Virginia, and they seek to require McKesson to ship fewer opioids in the future.  (*See, e.g.*, Am. Compl., Prayer.)  Plaintiffs acknowledge that McKesson's distribution of prescription opioids to registered West Virginia pharmacies is lawful.  (*Id.* ¶ 294 (McKesson supplied "12.75% of all Oxycodone and Hydrocodone that was legally distributed to West Virginia").)  Plaintiffs nonetheless allege that the volume of McKesson's distribution should have indicated to McKesson that downstream diversion was occurring, so McKesson should have shipped fewer prescription opioids to registered pharmacies.  (*See, e.g.*, *id.* ¶ 415.)  To convert McKesson's lawful distribution to unlawful distribution, Plaintiffs necessarily need to identify a legal duty not

---

[17] Again, Plaintiffs did not assert a federal law duty in support of their claims in other cases against other distributors.  As Plaintiffs repeatedly state, the Boone County Circuit Court ruled on earlier motions to dismiss in those other cases "**without reference to or reliance to any federal law or DEA warning letter**."  (*E.g.*, Doc. 5 at 8-9 n.6 (emphasis added).)  For the first time, Plaintiffs have chosen to rely on federal law.

[18] *See, e.g.*, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 399 (1987) ("When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option.").

[19] "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005); *see Gunn v. Minton*, 568 U.S. 251, 258 (2013) (reiterating *Grable*'s holding by stating that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress").

to ship orders of prescription opioids to registered pharmacies.  Plaintiffs thus plead:  **McKesson "has a legal duty to ensure it was not filling suspicious orders**."  (Am. Compl. ¶ 72; *see* Notice of Removal, Doc. 1, ¶¶ 19-27 (showing that Plaintiffs' claims have as an essential element an alleged duty not to ship controlled substances).)  When challenged to identify such a duty in state law, Plaintiffs identified only the DEA's Shipping Requirement:

> The Drug Enforcement Administration (DEA) for many years has instructed McKesson (and all other controlled substance distributors) that as part of its duty to maintain effective controls and procedures to guard against diversion (the identical duty imposed by West Virginia law), McKesson must not distribute suspicious orders of controlled substances.  DEA letters, Ex. 5.

(Doc. 1-1 at 11-12.)

The United States Court of Appeals for the District of Columbia Circuit, in an appeal of the DEA's revocation of Masters Pharmaceutical's registration, recently articulated the separate Reporting Requirement and Shipping Requirement under the federal CSA.  A federal regulation, 21 C.F.R. § 1301.74(b), imposes a suspicious order Reporting Requirement.  *Masters Pharm.*, 861 F.3d at 212 ("The Reporting Requirement is a relatively modest one: It requires only that a distributor provide basic information about certain orders to DEA . . . .").  The Shipping Requirement separately governs whether a distributor ships a suspicious order and derives solely from the DEA's interpretation of the CSA through adjudication.  *Id.* at 212-213 ("Once a distributor has reported a suspicious order, it must make one of two choices: decline to ship the order, or conduct some 'due diligence' and—if it is able to determine that the order is not likely to be diverted into illegal channels—ship the order (the Shipping Requirement).") (citing *Southwood Pharm.*, 72 Fed. Reg. at 36,500.)  West Virginia law imposes a similar Reporting Requirement, W. Va. C.S.R. § 15-2-4.4, administered by the WVBOP.  No Shipping

Requirement, however, exists under West Virginia law.  The WVBOP never has interpreted the

WVCSA in the same expansive manner that the DEA has interpreted the CSA.

Accordingly, Plaintiffs' claim of over-distribution necessarily states a federal question

when Plaintiffs rely on the DEA's Shipping Requirement as the basis for McKesson's alleged

duty to ship fewer prescription opioids to West Virginia.

### 2. The federal issue is actually disputed.

The federal issue—whether McKesson met the DEA's Shipping Requirement—is

actually disputed.  Plaintiffs' lawsuit seeks to find McKesson's lawful distribution to be unlawful

as a result of the volume shipped.  Whether McKesson should have refused to ship some orders

of prescription opioids is the "central point of dispute." *Gunn*, 568 U.S. at 258.

### 3. The federal issue is substantial.

The federal CSA comprehensively regulates the manufacture, distribution, prescribing,

and dispensing of controlled substances.  *See, e.g.*, 21 U.S.C. § 811 (administrative requirements

for those handling drugs, including drug classifications and schedules); 21 U.S.C. § 825 (labeling

and packaging); 21 U.S.C. § 826 (records and reports); 21 U.S.C. § 823 (registration).  The

U.S. Attorney General has exclusive authority to implement and enforce the CSA.  *See* 21 U.S.C.

§ 821 (granting Attorney General authority to promulgate rules and regulations); 21 U.S.C. § 824

(authority to deny, revoke, or suspend registrations); *see also* 21 U.S.C. § 871(a) (Attorney

General may delegate functions to Department of Justice).  Federal district courts have exclusive

jurisdiction to enjoin CSA violations.  *See* 21 U.S.C. § 882(a).  And federal appeals courts have

exclusive jurisdiction to hear cases by those aggrieved by decisions of the Attorney General

under the CSA.  *See* 21 U.S.C. § 877.

Congress designed the CSA to provide the "legitimate drug industry with a unified

approach to narcotic and dangerous drug control."  1970 U.S.C.C.A.N. 4566, 4571-72.

Consistent with this unified approach, state law on controlled substances cannot positively conflict with the CSA. *See* 21 U.S.C. § 903. Thus, the WVCSA exists only because federal law permits it, and even then, the WVCSA and its implementation in West Virginia cannot conflict with the CSA. West Virginia cannot regulate controlled substances independent of the federal CSA. Accordingly, when Plaintiffs seek to find McKesson liable for past shipments of prescription opioids and seek an injunction to require McKesson to ship fewer opioids—all of which seeks to apply the DEA's Shipping Requirement—Plaintiffs seek to enter a regulatory arena that is unquestionably federal.[20]

Plaintiffs repeatedly assert that they seek to apply federal law as "a component of the State's claims to be read in the state law context." There is no "state law context" regarding shipments of suspicious orders in which to apply federal controlled substances law. The West Virginia regulatory requirement that "[a]ll registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances," W. Va. C.S.R. § 15-2-4.2.1, does not require that distributors refuse to fill suspicious orders. The requirement facially refers to a distributor's security measures to protect against diversion while controlled substances are in the distributor's possession: "In order to determine whether a registrant has provided effective controls against diversion, **the West Virginia Board of Pharmacy shall evaluate the overall security system** and needs of the applicant or registrant." *Id.* (emphasis added). The regulation nowhere requires distributors to police downstream diversion by their pharmacy

---

[20] Plaintiffs' use of DEA data collected in its Automation of Reports and Consolidated Orders System ("ARCOS") as the foundation of their claims of over-distribution emphasizes the substantial nature of the federal issues in this case. Only DEA collects comprehensive, nationwide data on controlled substances from manufacture through dispensing. *See* 21 C.F.R. § 1304.33(c). Plaintiffs seek to use DEA data of lawful distribution of prescription opioids to somehow show that McKesson's distribution to West Virginia was unlawfully excessive. Plaintiffs cannot be said to have any special state-specific interest that arises from DEA data. The WVBOP does not similarly collect such data for West Virginia.

customers or beyond.  As McKesson observes in its Notice of Removal, the WVBOP never has

stated in a Legislative Rule or otherwise that it construes a distributor's responsibilities under the

WVCSA to include refusing to fill suspicious orders of controlled substances.[21]  (*See also* Notice

of Removal, Doc. 1, ¶ 32 (WVBOP has not even enforced its Reporting Requirement).)

### 4.     Resolving the federal issue in federal court would maintain, not disrupt, the federal-state balance in the CSA.

Exclusive authority to implement and enforce the CSA resides with the U.S. Attorney

General, and exclusive jurisdiction to hear CSA cases resides in federal courts.  (*See supra*

§ III(B)(3).)  Only the WVBOP has the authority to implement and enforce the WVCSA.  *See*

W. Va. Code § 60A-2-201(a).[22]  Plaintiffs are not the U.S. Attorney General (nor U.S. Attorneys

nor DEA agents), and Plaintiffs are not the WVBOP.  Accordingly, Plaintiffs have no authority

to implement or enforce the federal CSA or the WVCSA, which, again, cannot be implemented

or enforced inconsistently with the federal CSA.

Plaintiffs seek to invade federal regulation of McKesson.  McKesson's obligations in its

2017 settlement agreement with the DEA, of which Plaintiffs asked the state court to take

judicial notice, "are designed, in part, to meet its obligations under the CSA and its implementing

regulations."  (Doc. 1-3 at 10.)  Plaintiffs seek, *inter alia*, an injunction requiring McKesson "to

promptly notify the West Virginia Board of Pharmacy, Office of the Attorney General, and the

WV Department of Military Affairs and Public Safety of any and all suspicious orders for

---

[21] Moreover, as Plaintiffs represented to this Court, the "maintenance of effective controls against diversion" requirement is only a registration requirement.  (Doc. 4 at 130.)  It is not an independent legal obligation owed to the public at large.

[22] Under the WVCSA's regulatory scheme, whether McKesson meets its duties to the State are determined by WVBOP as conditions for maintaining its registration and avoiding penalties.  *See* W. Va. Code § 60A-8-7 (distributor licensing requirements); *id.* § 60A-8-10(a) (prescribing enforcement scheme); *id.* § 60A-8-12 (judicial enforcement); *id.* § 60A-8-14 (disciplinary actions).

controlled substances" in West Virginia.  (Am. Compl., Prayer ¶ 3.)  Accordingly, Plaintiffs seek, without even a basis in the WVCSA,[23] to intrude on existing federal regulation of McKesson.  Allowing Plaintiffs' lawsuit to be decided in state court would upset the federal-state balance in the CSA, not the other way around.

## IV.  CONCLUSION

Plaintiffs' lawsuit seeks hold McKesson liable for and to enjoin McKesson's lawful shipments of controlled substances that are regulated under the federal CSA.  Although Plaintiffs assured this Court that they could pursue McKesson based solely on state law claims, they chose to assert the DEA's Shipping Requirement as the duty that McKesson allegedly violated. Plaintiffs thus have chosen to state a federal question—an undeniably substantial one—that confers federal jurisdiction.[24]

---

[23] In the past West Virginia legislative session, a bill was proposed to require the WVBOP to forward suspicious order reports to the WVAG, because without such legislative authority, he could not be involved in the suspicious order reporting process.  H.B. 2735, 2017 Reg. Sess.  The bill did not advance from committee during the regular session.  Thus, the WVAG remains without authority to be involved with suspicious order reporting.

[24] Certainly, McKesson had an objectively reasonable basis for removing based on federal question jurisdiction when Plaintiffs reversed course and asserted to the state court that the DEA's Shipping Requirement is absolutely binding on McKesson, particularly after Plaintiffs obtained remand by asserting the contrary.  Federal jurisdiction is warranted, and in no case should sanctions be awarded against McKesson for seeking to have claims under the CSA heard in this Court.

Respectfully submitted,

**McKESSON CORPORATION**
**By Counsel:**

/s/Russell D. Jessee
Russell D. Jessee (W. Va. Bar No. 10020)
russell.jessee@steptoe-johnson.com
Devon J. Stewart (W. Va. Bar No. 11712)
devon.stewart@steptoe-johnson.com
**STEPTOE & JOHNSON PLLC**
P.O. Box 1588
Charleston, WV 25326-1588
Telephone: (304) 353-8000;
Facsimile: (304) 353-8180

And

Geoffrey Hobart (*Pro hac vice* application to be filed)
ghobart@cov.com
Matthew Benov (*Pro hac vice* application to be filed)
mbenov@cov.com
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000

*Counsel to McKesson Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**STATE OF WEST VIRGINIA**, *ex rel.*,
**PATRICK MORRISEY, Attorney General**, *et al.*,

        **Plaintiffs,**

**v.**                                            **Civil Action No. 2:17-cv-03555**
                                                            **Judge David Faber**

**McKESSON CORPORATION,**

        **Defendant.**

## CERTIFICATE OF SERVICE

        I hereby certify that on the 18th day of August, 2017, I electronically filed the foregoing **Defendant's Response in Opposition to The State of West Virginia's Motion to Remand and for Costs and Fees** via the CM/ECF system, which will provide notification and a copy of the filing to the following counsel of record:

| | |
|---|---|
| Vaughn T. Sizemore (#8231) | L. Lee Javins (#6613) |
| Deputy Attorney General | Special Assistant Attorney General |
| Office of the Attorney General | Bailey, Javins & Carter, LC |
| State Capitol Building 1, Room E-26 | 213 Hale Street |
| Charleston, WV  25305 | Charleston, WV  25301 |
| vaughn.t.sizemore@wvago.gov | LJavins@bjc4u.com |

There are no unrepresented parties.

                               /s/ Russell D. Jessee
                               Russell D. Jessee (W. Va. Bar No. 10020)
                               russell.jessee@steptoe-johnson.com
                               **STEPTOE & JOHNSON PLLC**
                               Chase Tower, 17th Floor
                               P.O. Box 1588
                               Charleston, WV 25326-1588
                               Telephone: (304) 353-8000
                               Facsimile:  (304) 353-8180

                               *Counsel to McKesson Corporation*

22